# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

**Master Docket No. 06-cv-17880-REB-PAC (MDL Docket No. 1788)**

IN RE QWEST COMMUNICATIONS INTERNATIONAL, INC. SECURITIES AND "ERISA" LITIGATION (NO. II)

---

## PLAINTIFFS' RESPONSE TO ARTHUR ANDERSEN LLP'S CONSOLIDATED MOTION TO DISMISS PLAINTIFF'S COMPLAINTS and MEMORANDUM OF LAW IN SUPPORT (Docket Nos. 111 and 113, filed August 3, 2007)

---

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................... 1

PROCEDURAL BACKGROUND ..................................................................... 1

SUMMARY OF ARGUMENT .......................................................................... 3

ARGUMENT .................................................................................................... 5

I.      Plaintiffs' Claims Are Timely. ................................................... 5

II.     Plaintiffs Have Properly Pleaded Their Section 10, Section 18, and Colorado Securities Act Claims. ............................................. 6

        A.      Plaintiffs Have Adequately Pleaded Andersen's Scienter. ............. 7

                1.      The PSLRA Scienter Standard Applies Only to Plaintiffs' Section 10(b) Claims, Not to Their Colorado Securities Act Claims. ........................................ 7

                2.      Plaintiffs Have Pleaded Facts Supporting a Strong Inference of Scienter. ........................................ 9

                        a.      The Standard Previously Applied by This Court in Denying Andersen's Motion to Dismiss Is Essentially the Same Standard That the Supreme Court Adopted in *Tellabs*. ........................... 9

                        b.      Plaintiffs' Allegations Satisfy the *Tellabs* Standard. ................................ 11

        B.      Plaintiffs Have Properly Pleaded Andersen's Fraudulent Conduct. ...................................................................... 19

        C.      Plaintiffs Have Adequately Pleaded Loss Causation .................... 24

        D.      Plaintiffs Have Properly Pleaded Actual Reliance in Support of Their Section 18 Claims. ........................................... 25

III.    Plaintiffs Have Properly Pleaded Their Remaining State Law Claims. .................................................................................... 27

        A.      Plaintiffs Have Properly Pleaded Their Claims for Common Law Fraud. ........................................................... 27

        B.      Plaintiffs Have Properly Pleaded Their Claims For Aiding And Abetting Fraud And Civil Conspiracy. ....................... 27

                1.      Plaintiffs Have Adequately Alleged Underlying Fraud Claims Against Qwest. ............................... 30

2.    Plaintiffs Have Properly Pleaded Their Aiding And Abetting and Civil Conspiracy Claims.................................. 30

3.    A Duty Of Care Is Not An Element Of Civil Conspiracy Under California Law. ........................................................ 32

C.    Plaintiffs Have Adequately Pleaded Their Claims For Negligent Misrepresentation. ........................................................ 34

CONCLUSION ................................................................................................ 35

# TABLE OF AUTHORITIES

**Page**

## CASES

*American Pipe & Construction Co. v. Utah,*
414 U.S. 538 (1974) ............................................................................... 3, 5

*Andersen, Bily v. Arthur Young & Co.,*
834 P.2d 745 (Cal. 1992) ........................................................................ 34

*Anixter v. Home-Stake Production Co.,*
77 F.3d 1215 (10th Cir.1996) .................................................................. 24

*Applied Equipment Corp. v. Litton Saudi Arabia, Ltd.,*
869 P.2d 454 (Cal. 1994) .................................................................... 32, 33

*AUSA Life Ins. Co. v. Ernst and Young,*
206 F.3d 202 (2d Cir. 2000) .................................................................... 14

*Banco Popular N. Am. v. Suresh Gandi,*
876 A.2d 253 (N.J. 2005) ........................................................................ 29

*Broderick v. PricewaterhouseCoopers, LLC,*
169 Fed. App'x 496 (9th Cir. 2006) ......................................................... 18

*Cheney v. Cyberguard Corp.,*
No. 98-6879, 2000 WL 1140306
(S.D. Fla. July 31, 2000), *modified on reconsideration*, 2001 WL
1916564 (S.D. Fla. Mar. 21, 2001) .......................................................... 18

*City of Philadelphia v. Fleming Cos.,*
264 F.3d 1245 (10th Cir. 2001) ............................................................... 11

*Croker v. Carrier Access Corp.,*
No. 05-cv-01011, 2006 WL 2035366
(D. Colo. July 18, 2006) .......................................................................... 24

*Deephaven Private Placement Trading Ltd. v. Grant Thornton & Co.,*
454 F.3d 1168 (10th Cir. 2006) ................................................. 4, 22, 23, 24

*Double Oak Const., L.L.C. v. Cornerstone Development
Intern., L.L.C.,*
97 P.3d 140 (Colo. Ct. App. 2003) .......................................................... 29

*Dura Pharm., Inc. v. Broudo,*
544 U.S. 336 (2005) ...................................................................... 6, 24, 25

*Ernst & Ernst v. Hochfelder,*
425 U.S. 185 (1976) .................................................................................. 6

*Filip v. Bucurenciu,*
28 Cal. Rptr. 3d 884 (Ct. App. 2005) ....................................................... 33

*Gabriel Capital, L.P. v. NatWest Finance, Inc.,*
94 F. Supp. 2d 491 (S.D.N.Y. 2000) ....................................................... 28

*Hoiles v. Alioto*,
461 F.3d 1224 (10th Cir. 2006) ............................................................ 28

*Holmes v. Baker*,
166 F. Supp. 2d 1362 (S.D. Fla. 2001) ................................................ 18

*In re Baan Co. Sec. Litig.*,
103 F. Supp. 2d 1, 21 (D. D.C. 2000) .................................................. 12

*In re Gilat Satellite Networks, Ltd.*,
No. CV-02-1510 (CPS), 2005 WL 2277476 (E.D.N.Y. Sept. 19, 2005) .................. 12

*In re ICG Communications, Inc. Sec. Litig.*,
2006 WL 416622 (D. Colo. Feb. 7, 2006) ............................................ 25

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
396 F. Supp. 2d 1178 (D. Colo. 2004) ..........................................passim

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
387 F. Supp. 2d 1130 (D. Colo. 2005) ............................................ 6, 25

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
Civ. No. 01-RB-1451 (D. Colo. Nov. 30, 2004) .................................passim

*In re Storage Tech. Corp. Sec. Litig.*,
147 F.R.D. 232 (D. Colo. 1993) ........................................................ 30

*In re Worldcom, Inc. Sec. Litig.*,
352 F. Supp. 2d 472 (S.D.N.Y. 2005) .............................................. 14, 15

*Kramer v. Showa Denko K.K.*,
929 F. Supp. 733 (S.D.N.Y. 1996) ................................................ 28, 35

*Mahaffy, Rider, Windholz & Wilson v. Central Bank of Denver, N.A.*,
892 P.2d 230 (Colo. 1995) .............................................................. 35

*Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*,
331 F.3d 406 (3d Cir. 2003) ............................................................ 28

*Natural Res. Corp. v. Royal Res. Corp.*,
427 F. Supp. 880 (S.D.N.Y. 1977) ................................................ 28, 35

*Roth v. Jennings*,
489 F.3d 499 (2d Cir. 2007) ............................................................ 16

*Rothman v. Gregor*,
220 F.3d 81 (2d Cir. 2000) .............................................................. 11

*S.E.C. v. Stansbury Holdings Corp.*,
No. 06-cv-00088, 2007 WL 552248
(D. Colo. Feb. 20, 2007) .......................................................... 28, 31

*Schwartz v. Celestial Seasonings, Inc.*,
124 F.3d 1246 (10th Cir.1997) ........................................................ 31

*Stichting Pensioenfonds, ABP v. Qwest Commc'ns Int'l, Inc.*,
Civ. Case No. 04-RB-0238 (D. Colo. Mar. 28, 2005) .............................. 2, 27, 29, 34

*Teachers' Ret. Sys. of La. v. Qwest Commc'ns Int'l., Inc.*,
No. Civ. 04CV0782, 2005 WL 2359311 (D. Colo. Sept. 23, 2005) ........................... 8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
--- U.S. ---, 127 S. Ct. 2499 (2007)................................................................. passim

*Thompson v. Jiffy Lube Intern., Inc.*,
No. 05-1203, 2007 WL 1218018
(D. Kan. Apr. 23, 2007) ...................................................................................... 16

*Van Dusen v. Barrack*,
376 U.S. 612 (1964)............................................................................................ 28

*Vassilatos v. Ceram Tech. Int'l, Ltd.*,
1993 WL 177780 (S.D.N.Y. May 19, 1993)........................................................... 30

**STATUTES**

109 Stat. 737,
§ 21D(b)(2) .......................................................................................................... 7

15 U.S.C.
§ 78j................................................................................................................... 2
§ 78r................................................................................................................... 6
§ 78u-4(b)(2) .................................................................................................... 3, 7

Colorado Securities Act
Section 11-51-501................................................................................. 3, 7, 8
Section 11-51-501(1) ............................................................................... 6
Section 11-51-604(3) ........................................................................... 3, 6, 7

**RULES**

9th Cir. R.
36-3(a), (c) ........................................................................................................ 18

Federal Rule of Civil Procedure
Rule 9(b) ..................................................................................................... 30, 31

SEC
Rule 10b-5 ................................................................................................... passim

**REGULATIONS**

17 C.F.R.
§ 240.10b-5............................................................................................................ 2

## INTRODUCTION

Plaintiffs Denver Employees Retirement Plan ("DERP"), Fire and Police Pension Association of Colorado ("FPPAC"), Merrill Lynch Funds ("ML Funds"),[1] New York State Common Retirement Fund ("NYSCRF"), and San Francisco Employees Retirement System ("SFERS") (collectively, "Plaintiffs") respectfully oppose the consolidated motion to dismiss of Arthur Andersen LLP ("Andersen"). For the reasons set forth below, Andersen's arguments that Plaintiffs' claims are either time-barred or inadequately pleaded lack merit, and its motion should be denied.

## PROCEDURAL BACKGROUND

For a more general background, Plaintiffs refer to and rely on the "Procedural History" set forth in Plaintiffs' Response to Qwest Commc'ns International Inc.'s, Qwest Capital Funding Inc.'s, and Qwest Corporation's Consolidated Motion to Dismiss Complaints Filed by Denver Employees Retirement Plan, Fire and Police Pension Association of Colorado, Various Merrill Lynch Entities, New York State Common Retirement Fund, and San Francisco Employees Retirement System ("Plaintiffs' Resp. to Qwest's Mot. to Dismiss"), filed contemporaneously herewith, at 1-5.

In addition to the five present actions, as the Court is aware, other cases involving the same acts of wrongdoing by Andersen and its co-Defendants have been before the Court for some time. Three decisions of this Court from those cases are of

---

[1] The terms "Merrill Lynch Funds" and "ML Funds" refer to the thirty-six investment funds formerly managed by Merrill Lynch Investment Managers, LP ("MLIM") (which combined with BlackRock Inc. ("BlackRock") on September 29, 2006) that are identified as plaintiffs in the transferred action entitled *Merrill Lynch Master Basic Value Trust Fund et al. v. Qwest Commc'ns Intl., Inc. et al.*, No. 06-cv-2238-REB (D. Colo.).

present importance. These decisions resolved issues that Andersen raised in prior motions to dismiss other complaints, the allegations of which were materially identical to the complaints that Andersen now challenges on some of the same grounds. Those decisions and some of their important points, which are discussed more fully in subsequent sections of this memorandum, are the following:

- *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 396 F. Supp. 2d 1178 (D. Colo. 2004). In this decision, the Court held, among other things, that the plaintiffs had stated a claim against Andersen for violation of Section 10(b) of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. § 78j, and SEC Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. *Id.* at 1203–09. It also held that the plaintiffs had stated a claim against Andersen for violation of Section 11 of the Securities Act of 1933 ("1933 Act"). *Id.* at 1208–09.

- *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, Civ. No. 01-RB-1451 (D. Colo. Nov. 30, 2004) (Order Concerning Defendants' Motions to Dismiss) ("*In re Qwest*, Nov. 30, 2004 Order") (attached with other unpublished authority). In this decision, the Court held, among other things, that the plaintiffs had stated a claim against Andersen for violation of Section 10(b) and Rule 10b-5. *Id.* at 17–20.

- *Stichting Pensioenfonds, ABP v. Qwest Commc'ns Int'l, Inc.*, Civ. Case No. 04-RB-0238, at 17–19 (D. Colo. Mar. 28, 2005) (Order Concerning Defendants' Motions to Dismiss) ("*Stichting*, Mar. 28, 2005 Order") (attached with other unpublished authority). In this decision, the Court held, among other things, that the plaintiff had stated claims against Andersen for violation of Rule 10b-5, *id.* at 17, 19–20, for negligent misrepresentation, *id.* at 40–43, for violation of the Colorado Securities Act, Sections 11-51-501 and Section 11-51-604(3), *id.* at 43–44, for aiding and abetting common law fraud, *id.* at 45, and for civil conspiracy, *id.* at 46–47.

## SUMMARY OF ARGUMENT

Plaintiffs have brought claims against Andersen for violations of Sections 10(b) and 18 of the 1934 Act, Section 11 of the 1933 Act, and Colorado Securities Act Sections 11-51-501 and 11-51-604(3), and for common law fraud, aiding and abetting fraud, civil conspiracy, and negligent misrepresentation.[2]  Andersen seeks dismissal, in whole or in part, of every one of these claims.  For the most part, it does so on the basis of arguments that this Court has already rejected in other *Qwest* actions.  To the extent that Andersen raises new arguments, they are without merit.

Andersen argues that certain of Plaintiffs' claims are untimely, because they are not identical to claims brought in the prior class action against Andersen and its co-Defendants.  Andersen is mistaken.  To the extent that these claims would otherwise be time-barred, they are tolled under *American Pipe & Construction Co. v. Utah,* 414 U.S. 538 (1974), and its progeny.

Andersen asserts that Plaintiffs' claims for violation of Sections 10(b) and 18 of the 1934 Act and for violation of the Colorado Securities Act are inadequately pleaded. It argues that the Section 10(b) claims and Colorado Securities Act claims fail because they do not satisfy the scienter pleading standard of the Private Securities Litigation Reform Act of 1995 ("PSLRA").  15 U.S.C. § 78u-4(b)(2).  The PSLRA, however, has no application to the Colorado Securities Act, and, in any event, this Court has already decided, correctly, that allegations materially identical to Plaintiffs' are adequate under the PSLRA.  Andersen concedes the latter but argues that the Supreme Court's recent

---

[2] The ML Funds have also asserted claims under the New Jersey Securities Act.  They do not, however, oppose Andersen's motion to dismiss those claims.

decision in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, --- U.S. ---, 127 S. Ct. 2499 (2007) alters the law in Andersen's favor. As Plaintiffs explain, however, this Court's earlier decisions applied essentially the same standard that was later adopted in *Tellabs*. Moreover, even if the *Tellabs* standard were different, Plaintiffs' allegations satisfy it.

Relying on another PSLRA pleading standard, Andersen argues that Plaintiffs have not properly pleaded that Andersen made a misstatement to support Plaintiffs' Section 10(b) and 18 and Colorado Securities Act claims. Andersen's arguments here parallel its arguments as to scienter and fail for much the same reasons. Its Colorado Securities Act argument again rests on the unsupportable premise that the PSLRA applies to the Colorado Securities Act. As to the 1934 Act claims (and also the Colorado Securities Act claims if the PSLRA did apply), this Court has already held that nearly identical allegations did satisfy the applicable standard. Once again Andersen argues that this Court should reverse itself because of an intervening decision, this time of the Tenth Circuit, that, Andersen argues, changes the state of the law in a relevant way. As Plaintiffs explain, however, the decision on which Andersen relies, *Deephaven Private Placement Trading Ltd. v. Grant Thornton & Co.*, 454 F.3d 1168 (10th Cir. 2006), does not change the law as to this issue.

Andersen also argues that Plaintiffs have failed to plead actual reliance in support of their Section 18 claims. Andersen, however, is mistaken. Plaintiffs specifically allege reliance in their respective complaints.

Finally, Andersen asserts that Plaintiffs have failed to plead adequately their remaining state law claims for common law fraud, aiding and abetting, civil conspiracy and negligent misrepresentation. Here again, however, the Court has already decided these issues against Andersen, and the few new arguments raised by Andersen are unavailing.

Andersen's arguments are without merit. Its motion to dismiss should be denied.

## ARGUMENT

### I.    Plaintiffs' Claims Are Timely.

Andersen contends that certain of Plaintiffs' Section 18 claims; Colorado common law claims; California common law fraud, negligent misrepresentation, and conspiracy claims; and Colorado Securities Act claims are untimely because they are not identical to claims brought in the prior class action against Andersen and its co-Defendants. Andersen is wrong. As Plaintiffs explain in their memorandum in opposition to Qwest's motion to dismiss, which is incorporated herein by reference (Plaintiffs' Resp. to Qwest's Mot. to Dismiss at Section I), to the extent that these claims would otherwise be time-barred, they are tolled under *American Pipe,* 414 U.S. 538, and its progeny. Plaintiffs' claims should, therefore, not be dismissed for this reason.

## II. Plaintiffs Have Properly Pleaded Their Section 10,[3] Section 18,[4] and Colorado Securities Act Claims.[5]

To plead their claims for violations of Section 10(b) and Rule 10b-5 promulgated thereunder, Plaintiffs must allege a material misrepresentation or omission, scienter, a connection with the purchase or sale of a security, transaction causation, economic loss, and loss causation. *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005). The essential elements of Plaintiffs' claims for violation of Colorado Securities Act Sections 11-51-501(1) and 11-51-604(3) are the same. *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 387 F. Supp. 2d 1130, 1147-48 (D. Colo. 2005). To plead their claims for violation of Section 18 of the 1934 Act, Plaintiffs must allege a material false or misleading statement or omission contained in an SEC filing, upon which Plaintiffs relied in their purchase of securities. 15 U.S.C. § 78r; *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 211 n.31 (1976).

Andersen argues that Plaintiffs' Section 10(b) claims and Colorado Securities Act claims should be dismissed for failure to plead scienter; that their Section 10(b) claims, Section 18 claims, and Colorado Securities Act claims should be dismissed for failure to plead fraudulent conduct with particularity and for failure to plead loss causation; and that their Section 18 claims should be dismissed for failure to plead reliance. Andersen is wrong.

---

[3] All Plaintiffs' Count I.

[4] NYSCRF's Count V; ML Funds' Count V; SFERS' Count V; FPPAC's Count V; and DERP's Count IV.

[5] NYSCRF's Count X; ML Funds' Count X; SFERS' Count XI; FPPAC's Count X; and DERP's Counts VI.

## A.  Plaintiffs Have Adequately Pleaded Andersen's Scienter.

Plaintiffs have adequately pleaded that Andersen acted with scienter.  Andersen asserts only one argument related to scienter:  Plaintiffs, it argues, have not satisfied the requirement of the PSLRA that Plaintiffs "state facts giving rise to a strong inference that the defendant acted with the required state of mind."  109 Stat. 737, § 21D(b)(2), 15 U.S.C. § 78u-4(b)(2).  On this ground it seeks dismissal of Plaintiffs' claims under Section 10(b) and Colorado Securities Act Sections 11-51-501 and 11-51-604(3).  Andersen's arguments are groundless.

### 1.  The PSLRA Scienter Standard Applies Only to Plaintiffs' Section 10(b) Claims, Not to Their Colorado Securities Act Claims.

By its terms the PSLRA scienter pleading standard applies to only one of Plaintiffs' claims against Andersen—their first claim for relief, brought pursuant to Section 10(b) of the 1934 Act and SEC Rule 10b-5 promulgated thereunder.  The application of the pleading standard is expressly limited to "any private action arising under this title [that is, the 1934 Act] in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind."  15 U.S.C. § 78u-4(b)(2).  Thus no part of the Colorado Securities Act (none of which arises under the 1934 Act) falls within its purview.[6]

In a footnote Andersen nonetheless asks the Court to rely on Andersen's PSLRA argument to dismiss as well Plaintiffs' claims brought under sections 11-51-501 and 11-51-604(3) of the Colorado Securities Act.  Andersen justifies this maneuver by citing a

---

[6] Andersen does not dispute that the PSLRA pleading standard does not apply to Plaintiffs' Section 18 claims because scienter is not an element of that claim.

decision of this Court that noted (correctly) that section 11-51-501 is a close parallel to SEC Rule 10b-5 and that Colorado courts consider federal case law persuasive "when parallel provisions of Colorado and federal law are involved." *Teachers' Ret. Sys. of La. v. Qwest Commc'ns Int'l., Inc.*, No. Civ. 04CV0782, 2005 WL 2359311, at *14 (D. Colo. Sept. 23, 2005).

It is not the interpretation of Rule 10b-5 that is at issue here, however, but the interpretation of the scienter pleading standard provision of the PSLRA. The PSLRA provision, in contrast with Rule 10b-5, has no parallel in Colorado law. That is, Colorado law does not require plaintiffs to plead facts giving rise to a "strong inference" of scienter. Andersen argues that this Court applied the PSLRA scienter standard to a Colorado Securities Act claim in *Teachers' Retirement System*. The Court did not do so, however. To the contrary, in that case the court simply relied on the federal interpretation of Rule 10b-5 itself—not the PSLRA—in interpreting the level of scienter required as an element of a section 11-51-501 claim. *Teachers' Ret. Sys.*, 2005 WL 2359311, at *14. It dismissed the Colorado Securities Act claim in that case because the complaint failed to allege that the defendants were aware that their acts were material. *Id.* It did not discuss the Colorado Securities Act claim in terms of the PSLRA. *Id.* Neither *Teachers' Retirement System* nor any other authority of which Plaintiffs are aware supports Andersen's argument that the PSLRA applies to a Colorado Securities Act claim.

### 2. **Plaintiffs Have Pleaded Facts Supporting a Strong Inference of Scienter.**

Andersen is also wrong as to Plaintiffs' Section 10(b) claim, to which the PSLRA scienter standard does apply. Contrary to Andersen's contention, Plaintiffs' allegations satisfy that standard. For that reason, Plaintiffs' allegations are also sufficient to support their Colorado Securities Act claims, even if the PSLRA standard did apply to those claims—which, as explained above, they do not.

As in deciding all other issues on a motion to dismiss, in deciding whether Plaintiffs have pleaded scienter, "courts . . . must accept all factual allegations in the complaint as true." *Tellabs,* 127 S. Ct. at 2509. Moreover, "courts must consider the complaint in its entirety." *Id.* The question is not whether any particular allegation is sufficient in and of itself to satisfy the pleading requirement, but rather "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter." *Id.*

### a. **The Standard Previously Applied by This Court in Denying Andersen's Motion to Dismiss Is Essentially the Same Standard That the Supreme Court Adopted in *Tellabs*.**

This Court has already ruled that almost identical allegations against Andersen satisfied the PSLRA "strong inference" requirement. *See In re Qwest*, 396 F. Supp. 2d at 1203-10; *In re Qwest*, Nov. 30, 2004 Order, at 18–20. Andersen does not argue that Plaintiffs' allegations here are weaker than those allegations that the Court has already ruled were sufficient.

Recognizing that the Court has already decided this issue in Plaintiffs' favor, Andersen relies almost exclusively on the Supreme Court's recent decision in *Tellabs*,

which Andersen hopes might convince the Court effectively to reverse itself. In *Tellabs*, the Supreme Court held that " in determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences." *Tellabs*, 127 S. Ct. at 2509. It therefore vacated a decision of the Seventh Circuit, which had "expressly declined to engage in such a comparative inquiry," *id.*, and remanded in order to allow that inquiry to proceed. *Id.* at 2513. Under the *Tellabs* Court's construction, the inference of culpability arising from the allegations (assumed to be true) need not be irrefutable; it need not even be the most plausible among the competing inferences. *Id.* at 2510. It must, however, be "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.*

Andersen's argument that this Court should revisit its prior conclusion would be plausible if the Court had, like the Seventh Circuit in *Tellabs*, refused to engage in a comparative inquiry in the first instance. To the contrary, however, the Court expressly considered the inferences in Plaintiffs' favor in the context of inferences supporting Andersen:

> When considering the inadequacy of an inference of scienter under the PSLRA, a court must consider negative inferences which may be drawn against the plaintiff. In other words, a court must evaluate a plaintiff's suggested inference in the context of other reasonable inferences that may be drawn from the facts alleged. The inference of scienter suggested by the plaintiff must be strong in light of the overall context of the allegation, including inferences against plaintiff's position.

*In re Qwest*, 396 F. Supp. 2d at 1188 (citations omitted).

While the Court was unable to quote the language of the yet-unwritten *Tellabs* decision, it took the same approach that the Supreme Court later took in that decision. Andersen asserts otherwise, referring to "the less rigorous standard applied in the Class Action." (Andersen Mem. at 8.) It does not explain what about it was "less rigorous," however. Nor, indeed, *was* it less rigorous. If Andersen had been able to suggest an innocent explanation for the facts alleged that was more compelling than the inference that Andersen acted with scienter, then the Court would not have held that the inference favoring plaintiff's position was "strong in light of the inferences against plaintiff's position." *In re Qwest*, 396 F. Supp. 2d at 1188. *Tellabs*, therefore, adds nothing new in this case.

### b. Plaintiffs' Allegations Satisfy the *Tellabs* Standard.

Even if *Tellabs* had created a standard that differed meaningfully from the one that this Court previously applied, Plaintiffs' allegations would still satisfy it. For the claim to survive, the complaint need only include facts supporting a strong inference that Andersen acted recklessly, meaning that Andersen's "conduct amount[ed] to an extreme departure from the standards of ordinary care, and present[ed] a danger of misleading buyers or sellers which [wa]s either known to [Andersen] or [wa]s so obvious that [Andersen] must have been aware of the danger." *In re Qwest*, 396 F. Supp. 2d at 1187 (citing *City of Philadelphia v. Fleming Cos.*, 264 F.3d 1245, 1260 (10th Cir. 2001)); *see also Rothman v. Gregor*, 220 F.3d 81, 90 (2d Cir. 2000).

Accordingly, "allegations of pervasive and long-standing accounting machinations, and resulting misstatements, may support a strong inference of scienter."

*In re Qwest*, 396 F. Supp. 2d at 1194 (citing cases); *see also In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 (CPS), 2005 WL 2277476, at *20 (E.D.N.Y. Sept. 19, 2005).  "In addition, GAAP violations that involve the premature recognition of revenue have been said to 'suggest a conscious choice to recognize revenue in a manner improper, and may therefore support a stronger inference of scienter.'"  *In re Gilat*, 2005 WL 2277476 at *20 (citing *In re Baan Co. Sec. Litig.*, 103 F. Supp. 2d 1, 21 (D.D.C. 2000)).  This is because "premature revenue recognition, unlike other types of GAAP violations, is less likely to be an inadvertent mistake."  *Id.* (citations omitted).

Plaintiffs allege that Andersen served as Qwest's "independent auditor" from 1999 through 2001, but also provided accounting, tax, and consulting services to Qwest.  (NYSCRF Compl. ¶ 38; ML Funds Compl. ¶ 76; SFERS Compl. ¶ 39; FPPAC Compl. ¶¶ 39; DERP Compl. ¶ 36.)  Qwest thus paid Andersen millions in fees for both audit, and non-audit work.  (NYSCRF Compl. ¶ 356; ML Funds Compl. ¶ 402; SFERS Compl. ¶ 366; FPPAC Compl. ¶ 367; DERP Compl. ¶ 334.)  During 2000 alone, Andersen received $1.1 million in fees related to the audit of Qwest's financial statements and another $6.8 million for non-audit related work.  (NYSCRF Compl. ¶ 38, 356; ML Funds Compl. ¶ 76, 402; SFERS Compl. ¶ 39, 366; FPPAC Compl. ¶¶ 39, 367; DERP Compl. ¶ 36, 334.)  In 2001, Qwest paid Andersen $1.4 million for auditing, $2.2 million for related services, including preparing or reviewing certain SEC filings, and $8.3 million for tax-related and consulting services.  *Id.*  These fees were particularly important to the partners in Andersen's Denver office as their incomes were dependent on the continued business from Qwest.  *Id.*  As this Court has held, a "desire

to retain the business of a client who paid fees at this level could motivate an auditor to disregard a client's accounting machinations." *In re Qwest*, 396 F. Supp. 2d at 1208.

Andersen reviewed, prepared, directed, and controlled all public financial disclosures, including public filings, statements to the press and investing public, earnings releases, and press releases relating to financial issues of Qwest, made by the Company during all relevant periods. (NYSCRF Compl. ¶ 73; ML Funds Compl. ¶ 110; SFERS Compl. ¶ 74; FPPAC Compl. ¶ 74; DERP Compl. ¶ 70.) It thus participated in the scheme, plan, and common course of conduct alleged in the complaint. (NYSCRF Compl. ¶¶ 73, 372; ML Funds Compl. ¶¶ 110, 418; SFERS Compl. ¶¶ 74, 382; FPPAC Compl. ¶¶ 74, 383; DERP Compl. ¶¶ 70, 348.). Plaintiffs further allege that Andersen knew of Qwest's accounting improprieties yet Andersen did not change Qwest's accounting practices, and in fact approved Qwest's accounting. (NYSCRF Compl. ¶¶ 375–77; ML Funds Compl. ¶¶ 421–23; SFERS Compl. ¶¶ 385–87; FPPAC Compl. ¶¶ 386–88; DERP Compl. ¶¶ 351–53.)

Plaintiffs allege a long list of violations of auditing standards and accounting standard to which Andersen turned a blind eye. (NYSCRF Compl. ¶¶ 370–73; ML Funds Compl. ¶¶ 416–19; SFERS Compl. ¶¶ 380–83; FPPAC Compl. ¶¶ 381–84; DERP Compl. ¶¶ 346–49 (listing violations); NYSCRF Compl. ¶¶ 74, 371–72, 422; ML Funds Compl. ¶¶111, 417–18, 470; SFERS Compl. ¶¶ 75, 381–82, 432; FPPAC Compl. ¶¶ 75, 382–83, 433; DERP Compl. ¶¶ 71, 347–48, 391 (ignoring red flags); *see generally* NYSCRF Compl. ¶¶ 368–74; ML Funds Compl. ¶¶ 414–20; SFERS Compl. ¶¶ 378–84; FPPAC Compl. ¶¶ 379–85; DERP Compl. ¶¶ 344–350.) Plaintiffs further

allege that Andersen falsely represented that Qwest's accounting methods complied with GAAP, and that Andersen's audit was in accordance with GAAS (NYSCRF Compl. ¶ 368; ML Funds Compl. ¶ 414; SFERS Compl. ¶ 378; FPPAC Compl. ¶¶ 379; DERP Compl. ¶ 344); that Andersen knew Qwest's financial statements contained material misstatements based on October 2000 and October 2001 reports to the Qwest audit committee that identified financial reporting risks and aggressive or unacceptable accounting practices (NYSCRF Compl. ¶¶ 375–77; ML Funds Compl. ¶¶ 421–23; SFERS Compl. ¶¶ 385–87; FPPAC Compl. ¶¶ 386–88; DERP Compl. ¶¶ 351–53); that despite its knowledge of accounting improprieties, Andersen did not change Qwest's accounting practices, and in fact approved Qwest's accounting, *id.*; and that Andersen's intentional failure to comply with GAAS, and its performance on the Qwest audits, rose to the level of deliberate recklessness. *Id.*

As one of the largest accounting firms in the world, Andersen was well aware of the strategies, methods, and procedures required by GAAS to conduct a proper audit. (NYSCRF Compl. ¶ 368; ML Funds Compl. ¶ 414; SFERS Compl. ¶ 378; FPPAC Compl. ¶ 379; DERP Compl. ¶ 344.) Plaintiffs have properly pleaded facts giving rise to a strong inference of scienter by alleging that Andersen, a "large entity, firm, institution, or corporation[,] . . . act[ed] in a manner that easily [could] be foreseen to result in harm." *In re Worldcom, Inc. Sec. Litig.*, 352 F. Supp. 2d 472, 496 (S.D.N.Y. 2005) (quoting *AUSA Life Ins. Co. v. Ernst and Young*, 206 F.3d 202, 221 (2d Cir. 2000) (internal quotation omitted)); (*see, e.g.*, NYSCRF Compl. ¶ 368; ML Funds Compl. ¶ 414; SFERS Compl. ¶ 378; FPPAC Compl. ¶ 379; DERP Compl. ¶ 344.) Andersen

knew of the audit risks inherent at Qwest and in the industries in which Qwest operated because of the comprehensive services it provided to Qwest over the years and its experience with many other telecom clients. *Id.*[7]

This Court was correct in concluding that such allegations "concerning Andersen's knowledge of the accounting issues presented by Qwest's [indefeasible right of use (IRU)] transactions are sufficient under the PSLRA." *In re Qwest*, 396 F. Supp. 2d at 1206. Plaintiffs have thus pleaded facts giving rise to a strong inference of Andersen's scienter.

While Andersen asserts that "Plaintiffs allege numerous facts not alleged in the Class Action that contradict any inference of Andersen's fraudulent intent," the allegations to which it refers do not appear in Plaintiffs' complaints at all. (Andersen Mem. at 9.) To the contrary, they appear in complaints filed by the SEC. Andersen's memorandum cites and quotes allegations from these SEC complaints in a manner that could easily lead the Court to believe that they are Plaintiffs' own allegations.[8] In a

---

[7] *See In re Worldcom, Inc.*, 352 F. Supp. 2d at 499 (Andersen's knowledge "that its unqualified certification of … financials would carry great weight with investors" constituted "proof of recklessness").

[8] In the following passage from its memorandum, for example, Andersen intersperses quotations from Plaintiffs' complaints and the SEC complaints, without identifying which quotation is from which source:

> For example, referring to allegations in the Securities and Exchange Commission's ("SEC's") complaints against Qwest and certain Qwest executives, Plaintiffs allege that Qwest employees "prepare[d] false agreements and internal memoranda," which the employees "provided . . . to Qwest's auditors to support Qwest's position" on a transaction that they knew "would be closely scrutinized by the auditors."

(Andersen Mem. at 10 (footnotes removed).) Although Andersen footnotes both of the allegations it quotes in this passage, it does not reveal in the footnotes or anywhere else

footnote, Andersen attempts to justify this ploy on the ground that the SEC complaints are "referenced in Plaintiffs' complaints" and can therefore be considered by the Court. (*Id.* at 10 n.17)

Contrary to the implicit premise of Andersen's argument, however, while the Court may take notice of the existence of statements in documents cited by Plaintiffs, it may not assume the truth of those statements. *See. e.g., Thompson v. Jiffy Lube Intern., Inc.*, No. 05-1203, 2007 WL 1218018, at *20 (D. Kan. Apr. 23, 2007) (denying motion to dismiss, because "[w]hile the Court can take judicial notice of certain documents, they cannot be used to show the truth of the matter asserted"); *see also, e.g., Roth v. Jennings*, 489 F.3d 499, at 509 (2d Cir. 2007) (explaining that documents filed with the SEC may be considered "only to determine what the documents stated, and not to prove the truth of their contents" (internal quotation marks omitted)). The Court, therefore, may not rely on allegations of the SEC to refute Plaintiffs' own

---

that the first quotation is from Plaintiffs' complaints and the second from the SEC's. Moreover, because the second quotation is not from Plaintiffs' complaints, Andersen's statement that "Plaintiffs allege" it is not only misleading, but plainly false. Merely referring to another complaint does not constitute alleging every fact alleged in that complaint.

Then, asserting that "Plaintiffs' Complaints also reference numerous factual allegations that" Qwest employees misled Andersen (Andersen Mem. at 10), Andersen proceeds to quote liberally from the SEC's complaints without explaining in the main text of the its memorandum that the quotations are not from Plaintiffs' complaints. Rather, Andersen simply cites the quotations to "Naccio Compl." and "Hoagland Compl," which it defines as the SEC complaints in a footnote.

allegations—which, unlike those in the SEC complaints, must be assumed to be true. *Tellabs*, 127 S. Ct. at 2509.[9]

Only one among the allegations that Andersen asserts refute scienter actually appears in Plaintiffs' complaints. That allegation is that Andersen brought to the attention of Qwest's audit committee certain questionable or impermissible accounting practices. (See NYSCRF Compl. ¶¶ 205, 375–77; ML Funds Compl. ¶¶ 242, 421–23; SFERS Compl. ¶¶ 207, 385–87; FPPAC Compl. ¶¶ 206, 386–88; DERP Compl. ¶¶ 185, 351–53.) According to Andersen, that it pointed these issues out to the committee actually shows that it *lacked* scienter.

Andersen's argument here makes no sense. Plaintiffs allege that Andersen exhibited its knowledge of improper practices in communications to Qwest's audit committee and that, despite the audit committee's failure to rectify the problem, Andersen approved Qwest's accounting practices. (See NYSCRF Compl. ¶¶ 205, 375–77; ML Funds Compl. ¶¶ 242, 421–23; SFERS Compl. ¶¶ 207, 385–87; FPPAC Compl. ¶¶ 206, 386–88; DERP Compl. ¶¶ 185, 351–53.) Contrary to Andersen's assertion, that is not "precisely what auditors are supposed to do." (Andersen Mem. at 16.) Indeed, if Andersen's argument were correct, then auditors could protect themselves from liability for fraud simply by expressing their knowledge of the fraud to their coconspirators. That is obviously not the law. *See, e.g., In re Qwest*, 396 F. Supp. 2d at 1205 (explaining

---

[9] Even if the truth of the SEC's allegations could be assumed—which it may not be—those allegations would not refute Plaintiffs' allegations, since they do not state, or even imply, that Andersen did not act knowingly or, at least recklessly, given the nature and extent of the wrongdoing.

that Andersen could be liable for consenting to incorporation of its false statement into other documents). Neither do the cases Andersen cites support its argument.[10]

In each of its remaining arguments as to scienter, Andersen points to one specific allegation and argues that that allegation is, in and of itself, insufficient to satisfy the scienter requirement. It argues that the allegation that Andersen issued a clean audit opinion despite Qwest's violations of GAAP is, "standing alone," insufficient. (Andersen Mem. at 13.) Similarly, it argues that an allegation of Andersen's "familiarity" with Qwest's business is insufficient. (*Id.* at 14.) Then it argues that an allegation that Andersen "received fees" is insufficient (*id.*), then that an allegation that Qwest's restatement was "large" is insufficient. (*Id.* at 16.) As noted above, however, the question is not whether any one allegation alone is sufficient, but whether the facts alleged, "taken collectively," satisfy the requirement. *Tellabs*, 127 S. Ct. at 2509. The question, in other words, is whether the combined force of the numerous and detailed allegations in Plaintiffs' complaints, reviewed above (*see supra*, pages 12–15), satisfy

---

[10] In *Cheney v. Cyberguard Corp.*, No. 98-6879, 2000 WL 1140306 (S.D. Fla. July 31, 2000), *modified on reconsideration*, 2001 WL 1916564 (S.D. Fla. Mar. 21, 2001), the fact that the court held "counter[ed] an inference" of scienter was that the auditor discovered the fraud *the year after* the alleged improper practices and revealed it *publicly. Id.* at *2, *12. Here, in contrast, Andersen discovered the fraud in time to prevent it but chose instead to conceal it from the public. The discussion Andersen refers to in *Holmes v. Baker*, 166 F. Supp. 2d 1362, 1380 (S.D. Fla. 2001) concerns allegations that an auditor actually *prevented* fraudulent practices. In Plaintiffs' complaints here, "[s]uch allegations are conspicuously absent"—as, in fact, they were also from the complaints in *Holmes. Id. Broderick v. PricewaterhouseCoopers, LLC*, 169 F. App'x 496, 498 (9th Cir. 2006) is an unpublished, nonprecedential opinion that does not state the facts of the case. *See* 9th Cir. R. 36-3(a), (c). It is not possible to discern from it whether it has any bearing on the present issue.

the standard.  As this Court has previously held as to almost identical allegations, they do.

**B.    Plaintiffs Have Properly Pleaded Andersen's Fraudulent Conduct.**

Andersen argues that Plaintiffs have not pleaded that Andersen made false statements, because they do not plead, according to Andersen, the reason why Andersen's statements were false, as required by the PSLRA.  Andersen is wrong.  This Court has already decided that allegations nearly identical to those of Plaintiffs here were sufficient to state a claim for securities fraud against Andersen.  *See In re Qwest*, 396 F. Supp. 2d at 1205; *In re Qwest,* Nov. 30, 2004 Order, at 17–20.

Plaintiffs have pleaded false statements by Andersen with particularity.  They have pleaded that Andersen issued clean and unqualified audit opinion letters with respect to Qwest's annual financial statements for the years 1999, 2000, and 2001.  (NYSCRF Compl. ¶¶ 7, 72; ML Funds Compl. ¶¶ 7, 109; SFERS Compl. ¶¶ 7, 73; FPPAC Compl. ¶¶ 7, 73; DERP Compl. ¶¶ 7, 69.)  Plaintiffs have properly pleaded with particularity that Andersen's January 31, 2000 and January 24, 2001 statements were materially false and misleading.  (NYSCRF Compl. ¶¶ 356–77; ML Funds Compl. ¶¶ 402–23; SFERS Compl. ¶¶ 366–87; FPPAC Compl. ¶¶ 367–88; DERP Compl. ¶¶ 334–53.)

In its January 31, 2000 statement, Andersen stated that the "consolidated financial statements [for the period ending December 31, 1999] present fairly, in all material respects, the financial position of Qwest … and subsidiaries as of December 31, 1999, and the results of their operations and their cash flows for the year

then ended in conformity with accounting principles generally accepted in the United States." (NYSCRF Compl. ¶ 362; ML Funds Compl. ¶ 408; SFERS Compl. ¶ 372; FPPAC Compl. ¶ 373; DERP Compl. ¶ 338.)  In its January 24, 2001 statement, Andersen made the same representation, with respect to Qwest's 1999 and 2000 financial statements.  (NYSCRF Compl. ¶ 363; ML Funds Compl. ¶ 409; SFERS Compl. ¶ 373; FPPAC Compl. ¶ 374; DERP Compl. ¶ 339.)  Both of Andersen's statements were false and misleading due to Andersen's failure to comply with GAAS and because Qwest's financial statements were not prepared in conformity with GAAP.  (NYSCRF Compl. ¶¶ 73, 357, 364; ML Funds Compl. ¶¶ 110, 403, 410; SFERS Compl. ¶¶ 74, 367, 374; FPPAC Compl. ¶¶ 74, 368, 375; DERP Compl. ¶¶ 70, 335, 340.)  Andersen also consented to the use of its unqualified opinions on Qwest's financial statements and reports filed with the SEC and otherwise disseminated to the investing public during the relevant period.  (NYSCRF Compl. ¶¶ 73, 357–59; ML Funds Compl. ¶¶ 110, 403–05; SFERS Compl. ¶¶ 74, 367–69; FPPAC Compl. ¶¶ 74, 368–69; DERP Compl. ¶¶ 70, 335–37.)

Plaintiffs allege that Andersen ignored Qwest's improper accounting for capacity swaps and IRU transactions that caused Qwest's financial statements, and therefore Qwest's statements, to be materially misleading.  (NYSCRF Compl. ¶¶ 365–77; ML Funds Compl. ¶¶ 411–23; SFERS Compl. ¶¶ 375–87; FPPAC Compl. ¶¶ 376–88; DERP Compl. ¶¶ 341–53.)  *See also In re Qwest* Nov. 30, 2004 Order at 18 (same).  Plaintiffs allege numerous IRU transactions that Qwest undertook during the relevant time period and that these transactions were used to artificially inflate revenue by tens

of millions of dollars. (NYSCRF Compl. ¶¶ 75–97; ML Funds Compl. ¶¶ 112–34; SFERS Compl. ¶¶ 76–98; FPPAC Compl. ¶¶ 76–98; DERP Compl. ¶¶ 72–94.); *see also In re Qwest*, Nov. 30, 2004 Order at 18 (same). Each of the IRU transactions is described in painstaking detail. *Id.* Plaintiffs allege that Qwest's recognition of revenue from these transactions violated GAAP, that Qwest failed to disclose the nature of the transactions, and that Qwest failed to disclose the effect these transactions had on Qwest's stated earnings. (*See, e.g.*, NYSCRF Compl. ¶¶ 6, 69, 75–24, 123–27, 149–54, 356–77; ML Funds Compl. ¶¶ 6, 106, 112–61, 160–64, 186–91, 402–23; SFERS Compl. ¶¶ 6, 70, 76–25, 124–28, 150–55, 366–87; FPPAC Compl. ¶¶ 6, 70, 76–125, 124–28, 150–55, 367–88; DERP Compl. ¶¶ 6, 66, 72–19, 118–22, 144–49, 334–53. *See also In re Qwest* Nov. 30, 2004 Order at 18 (same).

In its restatement, Qwest admitted to having manipulated the revenue recognized from the sale of capacity under IRU contracts by both incorrectly accounting for the transfers of optical capacity for cash and by incorrectly accounting for transfers involving the simultaneous exchange of optical capacity with other telecommunications service providers. (NYSCRF Compl. ¶¶ 112; ML Funds Compl. ¶¶ 149; SFERS Compl. ¶¶ 113; FPPAC Compl. ¶¶ 113; DERP Compl. ¶¶ 109.) The amount of these combined IRU manipulations reduced revenue for 2000 and 2001 by $467 million and $988 million, respectively. (NYSCRF Compl. ¶¶ 149; ML Funds Compl. ¶¶ 186; SFERS Compl. ¶¶ 150; FPPAC Compl. ¶¶ 150; DERP Compl. ¶¶ 144.). With respect to Qwest's 1999 statement, Qwest reported that, although it would not have to restate 1999 and 2000 pre-merger results, it recognized $1.32 billion of revenue in optical capacity asset

transactions during this time based on the same improper method that it restated for post-merger results. (NYSCRF Compl. ¶¶ 76; ML Funds Compl. ¶¶ 113; SFERS Compl. ¶¶ 77; FPPAC Compl. ¶¶ 77; DERP Compl. ¶¶ 73.)

Despite these allegations, Andersen asserts that Plaintiffs' allegations as to both Andersen's January 24, 2001 and January 31, 2000 statements fail to identify misstatements with particularity. This Court's prior decisions, however, directly contradict that assertion. *See In re Qwest*, 396 F. Supp. 2d at 1205 (holding that plaintiffs pleaded with particularity that Andersen's January 24, 2001 statement was misleading); *In re Qwest*, Nov. 30, 2004 Order, at 17–20 (holding that plaintiffs pleaded with particularity that Andersen's January 31, 2000 statement was misleading for the same reasons that the January 24, 2001 statement was misleading).

Andersen argues that the Tenth Circuit's decision last year in *Deephaven* calls into question this Court's decision on this issue. That argument, however, is without merit. *Deephaven* does not change the law as to this issue.

In *Deephaven*, the Tenth Circuit addressed how the PSLRA's requirement that the plaintiff must plead, as to any alleged misleading statement, "the reason or reasons why the statement is misleading," 15 U.S.C. § 78u-4(b)(1), applies in a Section 18 claim where the complaint included no allegations of scienter (scienter not being an element of a Section 18 claim). *Deephaven*, 454 F.3d at 1173, 1176. In particular, the issue was whether "[s]imply alleging . . . that GAAP violations in" audited financial statements rendered a clean auditing opinion "materially false and misleading" satisfies the PSLRA standard. *Id.* at 1176. As the *Deephaven* court noted, an audit opinion does not

"guarantee" the correctness of a company's financial statement but rather certifies that the auditor conducted its audit in compliance with GAAS and that its opinion is based on that audit. *Id.* at 1174. In order to satisfy the "state the reason" requirement, therefore, the court held, the plaintiff must allege the reason that the auditor's certification was untrue. *Id.* at 1176. For example, it could satisfy the requirement by alleging that the auditor "did not actually form its opinion regarding the . . . financial statements based on its audits" or that it lacked a reasonable basis for its opinion because it "did not plan and perform its audits . . . in accordance with GAAS." *Id.* The plaintiffs in *Deephaven* did not allege that the auditor violated GAAS. *Id.* at 1177 n.8. Much less did they allege that the auditor knew or was reckless in not knowing that its opinion was incorrect. *Deephaven*, 454 F.3d at 1172. In short, they pleaded no "reason" that the alleged statement was false.

*Deephaven* has no bearing on the present case because Plaintiffs have alleged specific reasons that Andersen's statements were false. (*See* discussion *supra*, pages 12–15, 19–22.) Plaintiffs allege numerous GAAS violations, enumerated above, including that Andersen issued clean audit reports in spite of knowing that audited statements did not conform with GAAP. In particular, Plaintiffs' allegations that Andersen actually identified improper procedures in communications with the audit committee render its reliance on *Deephaven* unpersuasive.[11]

---

[11] In a footnote Andersen asserts that, while *Deephaven* addressed a Section 18 claim, its "reasoning and application of the PSLRA standard applies equally to a statement alleged under Section 10(b) and the CSA." (Andersen Mem. at 23.) Andersen is technically correct as to Section 10(b). As suggested above, however, because of Section 10(b)'s scienter requirement, *Deephaven* is for all practical purposes irrelevant

723362.8

Andersen's assertion that Plaintiffs have not pleaded false statements is based entirely on its misplaced reliance on *Deephaven*. Andersen's argument should, therefore, be rejected.[12]

### C. Plaintiffs Have Adequately Pleaded Loss Causation.

Andersen asserts that Plaintiffs have not pleaded loss causation. Andersen's assertion is baseless. Indeed, this Court has already held that allegations nearly identical to those asserted by Plaintiffs here are sufficient to plead "loss causation." *In re Qwest*, Nov. 30, 2004 Order, at 17–24.

Loss causation is "a causal connection between the material misrepresentation and the loss." *Dura*, 544 U.S. at 342. To "establish loss causation, a plaintiff must allege ... that the subject of the fraudulent statement or omission was the cause of the actual loss suffered, i.e., that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security." *Croker v. Carrier Access Corp.*, No. 05-cv-01011, 2006 WL 2035366, at *7 (D. Colo. July 18, 2006) (internal quotation marks omitted). Plaintiffs may plead loss causation by alleging that they lost money by acquiring stock whose price was inflated due to fraud, and that the price then fell as a result of the revelation of the fraud. *See id.* (holding that

---

to any claim brought under that section. If the auditor knew, or was reckless in not knowing, that the underlying financial statement was false, then it would have violated GAAS by certifying it. This PSLRA pleading standard does not apply to the Colorado Securities Act, for the same reason that the scienter standard of the PSLRA does not apply to it. (*See supra*, Section II.A.1.)

[12] Plaintiffs do not dispute that this Court's prior decision in *Stichting,* Mar. 28, 2005 Order, at 17-20 (citing *Anixter v. Home-Stake Production Co.*, 77 F.3d 1215, 1226–27 (10th Cir.1996)) precludes their reliance on non-statement conduct by Andersen in support of their Section 10(b) claims.

loss causation was satisfied); *In re ICG Communications, Inc. Sec. Litig.*, 2006 WL 416622, at *10 (D. Colo. Feb. 7, 2006) (Blackburn, J.) (holding that loss causation was satisfied and noting that this Court had in a pre-*Dura* order in the same case "applied essentially the standard re-stated in *Dura*").

Plaintiffs have alleged that they acquired Qwest stock at a price inflated due to fraud, that the price dropped as a result of the fraud, Andersen's role in the fraud, and that Plaintiffs suffered damages as a result. (*E.g.*, NYSCRF Compl. ¶¶ 9, 17, 290, 298, 301, 327, 332, 356–77; ML Funds Compl. ¶¶ 9, 17–53, 334, 342, 347, 373, 378, 402–23; SFERS Compl. ¶¶ 9, 17, 298, 306, 311, 337, 342, 366–87; FPPAC Compl. ¶¶ 9, 17, 299, 307, 312, 338, 343, 367–88; DERP Compl. ¶¶ 9, 17, 271, 279, 282, 308, 313, 334–53.) These allegations satisfy loss causation.

Furthermore, not only has this Court already held that allegations nearly identical to those asserted by Plaintiffs here are sufficient as to Andersen, *In re Qwest*, Nov. 30, 2004 Order, at 17–24, but on September 12, 2005—five months after the Supreme Court's decision in *Dura*—this Court held that the plaintiff in another of the coordinated Qwest actions had adequately pleaded loss causation based on essentially the same allegations as to other defendants. *In re Qwest*, 387 F. Supp. 2d at 1148. Andersen's motion to dismiss Plaintiffs' Section 10(b) claims should be denied.

**D.** **Plaintiffs Have Properly Pleaded Actual Reliance in Support of Their Section 18 Claims.**

Contrary to Andersen's contention, Plaintiffs have properly pleaded actual reliance in support of their Section 18 claims. Plaintiffs have alleged that they relied on Andersen's material misstatements and omissions to their detriment. (NYSCRF Compl.

¶¶ 371–83, 425–30; ML Funds Compl. ¶¶ 417–29, 473–78; SFERS Compl. ¶¶ 381–93, 435–40; FPPAC Compl. ¶¶ 382–94, 436–41; DERP Compl. ¶¶ 347–59, 394–99.)  They have alleged that they and/or their agents "read and relied upon Andersen's 'Report of Independent Auditors' contained in documents filed with the SEC, including Qwest's 1999, 2000, and 2001 Form 10-Ks."  (NYSCRF Compl. ¶¶ 420; ML Funds Compl. ¶¶ 468; SFERS Compl. ¶¶ 430; FPPAC Compl. ¶¶ 431; DERP Compl. ¶¶ 468.) Plaintiffs have alleged their reliance on the "Report of Independent Auditors" contained in Qwest's Form 10-K's.  These reports are several paragraphs within the Form 10-K certifying the accuracy of Qwest's financial statements. As discussed above, Plaintiffs have properly pleaded with particularity that Andersen's January 31, 2000 and January 24, 2001 statements were materially false and misleading.  (NYSCRF Compl. ¶¶ 356–77; ML Funds Compl. ¶¶ 402–23; SFERS Compl. ¶¶ 366–87; FPPAC Compl. ¶¶ 367–88; DERP Compl. ¶¶ 334–53.)

       In arguing that Plaintiffs have not pleaded reliance, Andersen relies on and incorporates by reference the arguments made by Qwest in its memorandum at Section III.A.  As Plaintiffs explain in refuting Qwest's argument, Andersen is wrong.  (*See* Plaintiffs' Resp. to Qwest's Mot. to Dismiss at Section II.A.)   Andersen's argument that Plaintiffs' allegations are not specific enough is also addressed there.  Here, it is enough to add that, as discussed above, Plaintiffs have alleged specific misstatements by Andersen that caused them harm.  (*See supra*, Section II.B.)

**III.** **Plaintiffs Have Properly Pleaded Their Remaining State Law Claims.**

**A.** **Plaintiffs Have Properly Pleaded Their Claims for Common Law Fraud.**[13]

Relying on prior sections of its own memorandum as well as sections of Qwest's memorandum, Andersen argues that Plaintiffs have not pleaded reliance and loss causation in support of their common law fraud claims. As Plaintiffs explain above and in their memorandum opposing Qwest's motion, however, Plaintiffs have pleaded reliance and loss causation. (*See supra*, Sections II.B (reliance), II.C (loss causation), & II.D (reliance); Plaintiffs' Resp. to Qwest's Mot. to Dismiss at Sections II.A & II.E (reliance)). Moreover, this Court decided that substantially similar allegations were sufficient to support a common law fraud claim brought by a different plaintiff for the same wrongful acts by Andersen. *Stichting*, Mar. 28, 2005 Order, at 45.

**B.** **Plaintiffs Have Properly Pleaded Their Claims For Aiding And Abetting Fraud[14] And Civil Conspiracy.**[15]

Plaintiffs have adequately pleaded their claims for aiding and abetting and civil conspiracy. Indeed, this Court has already held that similar allegations arising from the same wrongful acts by Andersen were sufficient to support another plaintiff's claims for both aiding and abetting and for civil conspiracy. *Stichting*, Mar. 28, 2005 Order, at 44, 47.

---

[13] NYSCRF's Count XIII; ML Funds' Count XV; SFERS' Count XIV; FPPAC's Count XIII; and DERP's Count IX.

[14] NYSCRF's Counts XII & XIV; ML Funds' Counts XII & XVI; SFERS' Counts XIII & XV; FPPAC's Counts XII & XIV; and DERP's Counts VIII & X.

[15] ML Funds' Count XVIII; SFERS' Count XV; FPPAC's Count XV; and DERP's Count XII.

"The elements of aiding and abetting are: (1) the commission of a wrongful act;

(2) knowledge of the act by the alleged aider-abettor; and (3) the aider-abettor

knowingly and substantially participated in the wrongdoing." *Morganroth &*

*Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 415 (3d Cir. 2003);

*see S.E.C. v. Stansbury Holdings Corp.*, No. 06-cv-00088, 2007 WL 552248, at *6 (D.

Colo. Feb. 20, 2007) (stating elements); *Gabriel Capital, L.P. v. NatWest Finance, Inc.*,

94 F. Supp. 2d 491, 500 (S.D.N.Y. 2000) (same).[16]  Plaintiffs have pleaded their claim

by alleging fraud by Qwest, of which Andersen knew (*e.g.*, NYSCRF Compl. ¶¶ 375–77;

ML Funds Compl. ¶¶ 421–23; SFERS Compl. ¶¶ 385–87; FPPAC Compl. ¶¶ 386–88;

DERP Compl. ¶¶ 351–53; *see also, supra*, Section II.A.2), and which Andersen

substantially assisted through numerous false statements and improper audit

procedures.  (NYSCRF Compl. ¶¶ 375–77; ML Funds Compl. ¶¶ 421–23; SFERS

Compl. ¶¶ 385–87; FPPAC Compl. ¶¶ 386–88; DERP Compl. ¶¶ 351–53.).

A civil conspiracy "is a combination of two or more persons acting in concert to

---

[16] The laws of New York, New Jersey, California, and Colorado apply to the state law claims of the various Plaintiffs.  A federal district court applies the substantive law, including choice of law principals, of the state in which it sits, *Hoiles v. Alioto*, 461 F.3d 1224, 1230 (10th Cir. 2006), unless the action was transferred from another district, in which case it applies the law of the state in which the district court where the action was filed sits, *Van Dusen v. Barrack*, 376 U.S. 612 (1964).  Here, because Plaintiffs filed their actions in New York, California, and Colorado, the state law, including choice of law principles, of those states apply.  In all actions other than that brought by the ML Funds, Plaintiffs reside in the state in which they brought their action (*See* NYSCRF Compl. ¶ 17; SFERS Compl. ¶ 17; FPPAC Compl. ¶ 17; DERP Compl. ¶ 17), leaving little doubt that the law of that state applies.  In the action brought by the ML Funds, however, the Funds, with one exception, do not reside in New York, but in New Jersey. (*See* ML Funds Compl. ¶¶17–53.)  Under New York's choice of law principles, the law of the state in which the injury occurs generally applies, s*ee Kramer v. Showa Denko K.K.*, 929 F. Supp. 733, 741 (S.D.N.Y. 1996), which, in the case of fraud is generally understood to be the state in which the plaintiff resides.  *Natural Res. Corp. v. Royal Res. Corp.*, 427 F. Supp. 880, 882 (S.D.N.Y. 1977).  Thus the law of New Jersey applies to the claims of the New Jersey-resident Plaintiffs.

commit an unlawful act, or to commit a lawful act by unlawful means." *Banco Popular N. Am. v. Suresh Gandi*, 876 A.2d 253, 263 (N.J. 2005) (internal quotation marks omitted). "The principal element" of it "is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Id.* (internal quotation marks omitted); *see also Stichting,* Mar. 28, 2005 Order, at 46 (stating elements); *Double Oak Const., L.L.C. v. Cornerstone Development Intern., L.L.C.*, 97 P.3d 140, 146 (Colo. Ct. App. 2003) (same). Liability requires that the defendant understood the general objectives of the scheme, and implicitly or explicitly agreed to play a part in furthering them, and that the underlying wrong would itself be an actionable tort. *Banco Popular*, 876 A.2d at 263. Plaintiffs[17] have properly alleged their civil conspiracy claims against Andersen by alleging Andersen's numerous fraudulent statements, omissions and acts (*see, e.g.,* ML Funds Compl. ¶¶ 109–11, 402–23; SFERS Compl. ¶¶ 73–75, 366–87; FPPAC Compl. ¶¶ 73–75, 367–88; DERP Compl. ¶¶ 69–71, 334–53), in furtherance of a common course of conduct in which it agreed to participate (ML Funds Compl. ¶¶ 560–62; SFERS Compl. ¶¶ 508–510; FPPAC Compl. ¶¶ 497–99; DERP Compl. ¶¶ 445–47.), in full understanding of its objectives (*see supra*, Section II.A.2), and so caused harm to Plaintiffs. (ML Funds Compl. ¶ 11; SFERS Compl. ¶ 11; FPPAC Compl. ¶ 11; DERP Compl. ¶ 11).

Andersen makes three arguments to support dismissal of Plaintiffs' aiding and abetting and civil conspiracy claims. None of its arguments is meritorious.

---

[17] "Plaintiffs" here does not include NYSCRF, which does not bring a claim for civil conspiracy.

### 1. Plaintiffs Have Adequately Alleged Underlying Fraud Claims Against Qwest.

Andersen states that Plaintiffs' claims fail to the extent that Plaintiffs have not alleged an underlying claim for common law fraud against Qwest. Anderson, however, fails to explain to what extent, if any, or on what basis, it believes that Plaintiffs have failed to allege fraud by Qwest. Moreover, for the reasons set forth in Plaintiffs' brief in opposition to Qwest's motion to dismiss, which Plaintiffs here incorporate by reference, Plaintiffs have alleged underlying claims for fraud against Qwest. (*See* Plaintiffs' Resp. to Qwest's Mot. to Dismiss at Section II.E.)

### 2. Plaintiffs Have Properly Pleaded Their Aiding And Abetting and Civil Conspiracy Claims.

Andersen contends that Plaintiffs have not pleaded their aiding and abetting and civil conspiracy claims with sufficient specificity to meet the requirements of Federal Rule of Civil Procedure 9(b). Rule 9(b), however, applies only to the underlying fraud element of the aiding and abetting and conspiracy claims—that is, the fraud alleged against Qwest. Because neither knowledge nor substantial assistance is a circumstance constituting fraud, allegations as to those elements need not be pleaded with particularity. *In re Storage Tech. Corp. Sec. Litig.*, 147 F.R.D. 232, 235 (D. Colo. 1993) (holding in aiding and abetting securities fraud claim that "although an aiding and abetting claim must be pled with particularity insofar as the [fraud claim] is concerned the other elements of an aiding and abetting claim may be pled generally"); *Vassilatos v. Ceram Tech. Int'l, Ltd.*, No. 92 Civ. 4574, 1993 WL 177780, at *11 n.4 (S.D.N.Y. May 19, 1993) ("Rule 9(b) properly applies to plaintiffs' allegations only to the

extent they concern the primary violation . . . because an aiding and abetting claim need not allege that the aider and abettor made a fraudulent statement that must be particularized in accordance with the provisions of Rule 9(b).")  Andersen cites no authority supporting its assertion that Rule 9(b) applies to any element except the underlying fraud claim against Qwest.

Even if the application of Rule 9(b) were not limited to the pleading of the underlying fraud, Plaintiffs' allegations would suffice.  They would meet the requirements as to the substantial assistance element of the aiding and abetting claim for the reasons discussed above concerning the fraudulent conduct element of Plaintiffs' Section 10(b) claims.  (*See supra*, Section II.B.)[18]

As for the knowledge element, Rule 9(b) is, by its terms, inapplicable to allegations of mental states. Fed. R. Civ. P. 9(b).  "The Tenth Circuit has held that 'Rule 9(b) requires only the identification of the circumstances constituting fraud, and that it does not require any particularity in connection with an averment of intent, knowledge or condition of mind.'"  *Stansbury Holdings*, 2007 WL 552248, at *2 (quoting *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir.1997)).  If Rule 9(b) did apply, however, to the knowledge element, Plaintiffs would satisfy it, for the reasons discussed above regarding scienter as to Plaintiffs' Section 10(b) claims. (*See supra*, Section II.A.)

---

[18] Here again, Andersen attempts to undermine Plaintiffs' allegation by misleading reference to "factual allegations referenced in Plaintiffs' own Complaints."  As discussed above, the allegations to which Andersen refers are not Plaintiffs' allegations.  (*See supra*, Section II.A.2.b.)

### 3. A Duty Of Care Is Not An Element Of Civil Conspiracy Under California Law.

Misstating the holding of *Applied Equipment Corp. v. Litton Saudi Arabia*, *Ltd.*, 869 P.2d 454 (Cal. 1994), Andersen asserts that under California law, a defendant cannot be held liable for conspiracy unless it owes a duty of care to the plaintiff. As a preliminary matter, this argument applies only to the claims of SFERS, alone to which California law is potentially applicable. (*See supra*, note 16.) Even as to SFERS's claim, moreover, this argument is baseless.

No one who has read *Applied Equipment* could possibly interpret it as limiting liability for conspiracy to defendants who have a special duty to the plaintiffs. *Applied Equipment* states the elements of conspiracy quite clearly, and they do not include any special duty of the defendant to the plaintiff:

> The elements of an action for civil conspiracy are the formation and operation of the conspiracy and damage resulting to plaintiff from an act or acts done in furtherance of the common design.... In such an action the major significance of the conspiracy lies in the fact that it renders each participant in the wrongful act responsible as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of his activity.

*Id.* (internal quotation marks omitted). The issue addressed in *Applied Equipment* was whether a "contracting party [can] be held liable in tort for conspiracy to interfere with its own contract." *Id.* at 455. The court concluded that it cannot, for two reasons. First, it reasoned that actors who are legally incapable of committing a particular tort themselves cannot be held liable for *conspiracy* to commit that tort, either. *Id.* at 457-58. Under California law, a party to a contract cannot be liable in tort for interference

with the contract. *Id.* Therefore, there is no conspiracy liability against parties to the contract for that tort, either. *Id.* Second, it held that allowing tort liability for what is essentially a breach of contract would "obliterate[] vital and established distinctions between contract and tort theories of liability." *Id.*

The passage of *Applied Equipment* that Andersen cites and quotes concerns the first of these reasons. There, the court makes it perfectly clear that by the phrase "owes a duty to plaintiff recognized by law" it means nothing other than "is legally capable of committing the tort." *Id.* at 457-58. The "duty" to which the court refers is the duty to refrain from tortious conduct—the obligation that "[t]he law imposes . . . that every person is bound without contract to abstain from injuring the person or property of another, or infringing upon any of his rights." *Id.* at 460 (internal quotation marks omitted). Where there is a contract between two parties, this duty is displaced to the extent of the duties of the contract. *See id.*

Thus the meaning of *Applied Equipment* is nearly the exact opposite of Andersen's gloss of it. *Applied Equipment* held that, as to the conspiracy claim it addressed (conspiracy to interfere with contract), it is precisely those defendants who *do* have a certain special duty to the plaintiff (the duty not to breach the contract) who *cannot* be liable for conspiracy, whereas conspiracy liability is available against "strangers—interlopers who have no legitimate interest in the scope or course of the contract's performance." *Id.* at 459; *see also Filip v. Bucurenciu*, 28 Cal. Rptr. 3d 884, 892 (Ct. App. 2005) (rejecting defendants' *Applied Equipment* argument because the fraudulent conduct alleged by defendant was tortious).

- 33 -

In the present case, Andersen is not legally incapable of committing fraud against Plaintiffs, nor is it immune from liability for fraud. Therefore, there is no bar to Plaintiffs' claim for conspiracy to commit fraud. Andersen's arguments should therefore be rejected.

### C.  Plaintiffs Have Adequately Pleaded Their Claims For Negligent Misrepresentation.[19]

Plaintiffs[20] have properly pleaded their claims for negligent misrepresentation. This Court has already held that substantially similar allegations against Andersen were sufficient to support a claim for negligent misrepresentation in another Qwest-related action. *Stichting,* Mar. 28, 2005 Order, at 40–43. Andersen attempts to escape this conclusion as to Plaintiffs whose claims allegedly arise under the law of New York or California, asserting that those states limit liability of auditors to circumstances in which the auditor's conduct created a relationship with the plaintiff that approached privity. Andersen's argument lacks merit.

In the California case cited by *Andersen, Bily v. Arthur Young & Co.*, 834 P.2d 745 (Cal. 1992), which can apply only to the claim of SFERS, the California Supreme Court held that "intended beneficiaries of an audit report are entitled to recovery on a theory of negligent misrepresentation." *Id.* at 772. This is essentially the same standard that this Court applied in denying the motion to dismiss this claim against Andersen in 2005 under Colorado law. *Stichting,* Mar. 28, 2005 Order, at 42 (quoting

---

[19] ML Funds' Count XVII; SFERS' Count XVI; FPPAC's Count XVI; and DERP's Count XI.

[20] "Plaintiffs" here does not include NYSCRF, which does not bring this claim.

and relying on *Mahaffy, Rider, Windholz & Wilson v. Central Bank of Denver, N.A.,* 892 P.2d 230, 236 (Colo. 1995) for the proposition that "a 'theory of negligent misrepresentation is proper where a professional knows that its representation will be relied upon by a non-client for business purposes'").

As to New York law, Andersen's assertion is irrelevant. NYSCRF, which is the only Plaintiff whose claims arise under New York law, does not bring this claim.[21] None of Plaintiffs' negligent misrepresentation claims, therefore, should be dismissed.[22]

## CONCLUSION

For all the foregoing reasons, Plaintiffs have properly stated their claims for relief against Andersen.

---

[21] Under New York choice of law rules, New Jersey law applies to the substantive law of the ML Funds' common law claims. Where plaintiff and defendant have different domiciles, the law of the state where the injury occurred will normally apply. *Kramer v. Showa Denko K.K.,* 929 F. Supp. 733, 741 (S.D.N.Y. 1996). "[L]oss from fraud is deemed to be suffered where its economic impact is felt, normally the plaintiff's residence." *Natural Resources Corp. v. Royal Resources Corp.,* 427 F. Supp. 880, 882 (S.D.N.Y. 1977). The ML Funds reside in New Jersey and suffered their losses there. (ML Compl. ¶¶ 6–53.) Accordingly, New Jersey law applies to the ML Funds' claims for common law fraud, aiding and abetting, and negligent misrepresentation.

[22] Plaintiffs do not oppose dismissal of that portion of the Plaintiffs' Section 11 claim against Andersen that is based on the June 21, 1999 registration statement (amended September 17, 1999). Moreover, as to their Section 11 claim, Plaintiffs do not rely on misstatements in Andersen's 2001 year-end audit opinion.

Dated: September 17, 2007      Respectfully submitted,

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP


By:      s/ Steven E. Fineman
         Steven E. Fineman

Steven E. Fineman
Hector D. Geribon
Daniel P. Chiplock
David P. Gold
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
780 Third Avenue, 48th Floor
New York, NY  10017-2024
Telephone:  (212) 355-9500
Facsimile:   (212) 355-9592

Richard M. Heimann
Joy A. Kruse
Bruce W. Leppla
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

Attorneys for Plaintiffs Denver Employees Retirement Plan, the Fire and Police Pension Association of Colorado, the Merrill Lynch Funds, the New York State Common Retirement Fund, and the San Francisco Employees Retirement System

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

### CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of September, 2007, a copy of the foregoing

**PLAINTIFFS' RESPONSE TO ARTHUR ANDERSEN LLP'S CONSOLIDATED**

**MOTION TO DISMISS PLAINTIFF'S COMPLAINTS and MEMORANDUM OF LAW IN**

**SUPPORT (Docket Nos. 111 and 113, filed August 3, 2007)** was electronically filed

with the Clerk of the Court using the USDC CM/ECF system, which will send notification

of such filing to the following e-mail addresses:

| Timothy G. Atkeson | Tim_ Atkeson@aporter.com | Counsel for Defendant Arthur Andersen, LLP |
|---|---|---|
| Jeffrey A. Barrack | jbarrack@barrack.com | Counsel for Plaintiff PA PSERS |
| Daniel Chiplock | dchiplock@lchb.com | Counsel For Plaintiffs FPPAC, Merrill Lynch Funds, NYSCRF, & SFERS |
| Ty Cobb | tcobb@hhlaw.com | Counsel for Defendants Jacobsen & Wilks |
| David L. Cook | david.cook@cliffordchance.com | Counsel for Defendant Woodruff |
| Stephanie E. Dunn | sdunn@perkinscoie.com<br>sdunn-efile@perkinscoie.com | Counsel for Defendant Smith |
| Steven Fineman | sfineman@lchb.com | Counsel For Plaintiffs FPPAC, Merrill Lynch Funds, NYSCRF, & SFERS |
| John A. Freedman | john_freedman@aporter.com | Counsel for Defendants Arthur Andersen & Iwan |

723362.8

| Walter W. Garnsey, Jr. | wgarnsey@khgk.com<br>smiller@khgk.com | Counsel for Defendant Casey |
|---|---|---|
| Hector Geribon | hgeribon@lchb.com | Counsel For Plaintiffs FPPAC, Merrill Lynch Funds, NYSCRF, & SFERS |
| Jeffrey Gross | jgross@cooley.com | Counsel for Defendant Woodruff in Merrill Lynch Funds matter |
| Richard Heimann | rheimann@lchb.com | Counsel For Plaintiffs FPPAC, Merrill Lynch Funds, NYSCRF, & SFERS |
| Robert F. Hill | roberthill@hillandrobbins.com | Counsel for Plaintiffs |
| Michael J. Hofmann | michael.hofmann@hro.com | Counsel for Defendants Anschutz & Slater |
| Jennifer H. Hunt | jhunt@hillandrobbins.com | Counsel for Plaintiffs |
| Richard L. Jacobson | richard.Jacobson@aporter.com | Counsel for Defendant Casey |
| M. Richard Komins | rkomins@barrack.com | Counsel for Plaintiff PA PSERS |
| Joy Kruse | jakruse@lchb.com | Counsel For Plaintiffs FPPAC, Merrill Lynch Funds, NYSCRF, & SFERS |
| Coates Lear | clear@hhlaw.com | Counsel for Stephen Jacobsen & Lewis Wilks |
| Martin D. Litt | martin.litt@hro.com | Counsel for Defendants Anschutz & Slater |
| Edward T. Lyons, Jr. | elyons@joneskeller.com<br>mdeiss@joneskeller.com | Counsel for Defendant Smith in Merrill Lynch Funds Matter |
| David Meister | david.meister@cliffordchance.com | Counsel for Defendant Woodruff |
| James Miller | james.miller@cliffordchance.com | Counsel for Defendant Woodruff |
| Robert N. Miller | rmiller@perkinscoie.com | Counsel for Defendant Smith |

| | | |
|---|---|---|
| Charles Mitchell | ctmitchell@hhlaw.com | Counsel for Defendants Jacobsen & Wilks |
| Barbara C. Moses | bmoses@maglaw.com jlaing@maglaw.com | Counsel for Defendant Mohebbi |
| Edward S. Nathan | enathan@sgklaw.com lspecter@sgklaw.com | Counsel for Defendant Nacchio |
| James E. Nesland | neslandje@cooley.com foutsdl@cooley.com inghramjl@cooley.com | Counsel for Defendant Tempest |
| Christopher Rhee | christopher.rhee@aporter.com | Counsel for Defendant Casey |
| Ashley Rupp | arupp@maglaw.com | Counsel for Defendant Mohebbi |
| Paul H. Schwartz | schwartzph@cooley.com vrush@cooley.com colitigation@cooley.com inghramjl@cooley.com | Counsel for Defendant Tempest |
| Daniel Shea | dfshea@hhlaw.com | Counsel for Defendants Jacobsen & Wilks |
| Joel M. Silverstein | jsilverstein@sgklaw.com | Counsel for Defendant Nacchio |
| Jeffrey A. Smith | jsmith1@cooley.com foutsdl@cooley.com inghramjl@cooley.com | Counsel for Defendant Tempest |
| Jeffrey Speiser | jspeiser@sgklaw.com | Counsel for Defendant Nacchio |
| Michael Trager | michael.trager@aporter.com | Counsel for Defendant Casey |
| Ronald Wilcox | ronwilcox@hillandrobbins.com | Counsel for Plaintiffs |
| David A. Zisser | dzisser@ir-law.com | Counsel for Defendant Weisberg |
| Alfred P. Levitt | alevitt@bsfllp.com | Counsel for Defendant Qwest Commc'ns International, Inc., Qwest Capital Funding, Inc., and Qwest Corp. |

| | | |
|---|---|---|
| David R. Boyd | dboyd@bsfllp.com | Counsel for Defendant Qwest Commc'ns International, Inc., Qwest Capital Funding, Inc., and Qwest Corp. |
| Kenneth F. Rossman, IV | krossman@bsfllp.com | Counsel for Defendant Qwest Commc'ns International, Inc., Qwest Capital Funding, Inc., and Qwest Corp. |
| Marcy M. Heronimus | mheronim@sah.com | Counsel for Defendant Qwest Commc'ns International, Inc., Qwest Capital Funding, Inc., and Qwest Corp. |
| Terence C. Gill | tgill@sah.com | Counsel for Defendant Qwest Commc'ns International, Inc., Qwest Capital Funding, Inc., and Qwest Corp. |

and, I also certify that I have served same by depositing in the U.S. Mail, first-class

postage prepaid, addressed to the following:

Mark T. Drooks
Thomas V. Reichert
**Bird, Marella, Boxer, Wolpert, Nessim, Drooks & Lincenberg, A Professional Corporation**
1875 Century Park East, 23rd Floor
Los Angeles, CA 90067-2561
Counsel for Defendant Szeliga
Phone: 310.201.2100
Fax: 310.201.2110

Mark C. Hansen
Kevin B. Huff
David L. Schwarz
**Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C.**
Sumner Square
1615 M. Street NW, Suite 400
Washington, D.C. 20036-3209
Counsel for Philip Anschutz & Craig Slater
Phone: 202.326.7900
Fax: 202.326.7999

John M. Richilano
Marci A. Gilligan
**Richilano & Gilligan, P.C.**
633 17th Street; Suite 1700
Denver, CO 80202
Counsel for Joseph Nacchio
Phone: 303.893.8000
Fax: 303.893.8055

Jonathan D. Schiller
**Boies, Schiller & Flexner, LLP-DC**
5301 Wisconsin Avenue, North West
#800
Washington, DC 20015
Counsel for Defendant Qwest Commc'ns
International, Inc., Qwest Capital Funding,
Inc., and Qwest Corp.
Phone: 202-895-7566
Fax: 202.237.6131

s/ Daniel P. Chiplock
Daniel P. Chiplock
LIEFF, CABRASER, HEIMANN & BERNSTEIN,
LLP
780 Third Avenue, 48th Floor
New York, NY  10017
Tel.: (212) 355-9500
Fax: (212) 355-9592
E-mail:  dchiplock@lchb.com
Attorneys for Plaintiffs Denver Employees
Retirement Plan, the Fire and Police Pension
Association of Colorado, the Merrill Lynch Funds,
the New York State Common Retirement Fund, and
the San Francisco Employees Retirement System

723362.8